## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-00478-SCT

*SHAVONNE KING*

*v.*

*GRAND CASINOS OF MISSISSIPPI, INC. -*
*GULFPORT*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/95 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON CO. CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN R. SANTA CRUZ |
| ATTORNEY FOR APPELLEE: | HARRY R. ALLEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 7/17/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/7/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. The present appeal arises from a summary judgment ruling against an employee who sued the owners of the Grand Casinos in Gulfport under general maritime law for injuries suffered while working at the casino. The present appeal calls upon this Court to determine whether the Grand Casinos, a shore-side casino constructed partially out of navigable barges, is properly considered to be a "vessel" for the purposes of the federal maritime law. Finding this question of federal maritime law to have already been answered in the negative by the Fifth Circuit Court of Appeals in an almost identical context, this Court defers to the judgment of said court and affirms the summary judgment ruling of the trial court.

### II. STATEMENT OF THE FACTS AND CASE

¶2. On August 7, 1993, Shavonne King (King), while working as a waitress at the Grand Casinos in Gulfport, slipped and fell on the deck of the casino, injuring her knee in the process. King alleges that this fall was the result of water dripping from a palate of frozen food, the placement of which rendered the deck unreasonably dangerous. On March 30, 1994, King filed suit against Grand Casinos, seeking recovery under the Jones Act[1], and the General Maritime Law for the negligence of Grand Casinos and its employees.

¶3. On January 24, 1995, Grand Casinos filed a motion for summary judgment. Circuit Judge Kosta Vlahos granted Grand Casinos' motion, ruling that the casino in question did not constitute a "vessel" within the meaning of the Jones Act and General Maritime Law and that maritime remedies were thus unavailable for King. King timely appealed from said ruling.

### III. LAW

#### A. THE TRIAL COURT ERRONEOUSLY USED THE JONES ACTS TEST FOR VESSEL STATUS AND IGNORED WELL ESTABLISHED JURISPRUDENCE.

#### B. MS. KING IS ENTITLED TO A MARITIME REMEDY UNDER THE GENERAL MARITIME LAW FOR HER INJURIES ON A VESSEL.

¶4. This Court's task in the present case is simplified greatly by the fact that there is a Fifth Circuit Court of Appeals decision on point, which this Court considers to be controlling with regard to the present issue of federal law. In *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560 (5th Cir. 1995), consolidated with *Ketzel v. Mississippi Riverboat Amusement, Ltd.*, the Fifth Circuit Court of Appeals affirmed the district court's granting of summary judgment to the Biloxi Belle Casino with regard to two maritime suits filed against said casino by two separate employees for injuries suffered while working at the casino.

¶5. At the district court level, Ketzel, like King in the present case, had argued that the casino should be considered a "vessel," based in part on the fact that the casino had been "towed previously over navigational waters, that it was towed to a safer location during Hurricane Andrew in 1992, and that the defendant has a current contract to move the Biloxi Belle should the need arise in the future." *Ketzel,* 867 F.Supp 1260, 1266 (S.D. Miss. 1994). The district judge ruled that this argument was "meritless", noting that:

> The mere fact that a structure is floating or 'capable of movement across navigational waters' does not grant 'vessel' statutes. (citations omitted). A structure, by virtue of its flotation, is therefore not exposed to the hazards of the sea sufficient to grant 'seaman' status. . . . That a floating structure may be moved periodically because of the dangers of inclement weather is not sufficient to convert its status to a vessel. *citing Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19 (1926).

*Ketzel*, 867 F.Supp. at 1267.

¶6. The Fifth Circuit on appeal expressed some hesitance about the district court rulings, fearing that they might be over broad and "come back to haunt" them. The Fifth Circuit nevertheless affirmed the summary judgment rulings in favor of the casino, based upon an analysis of prior decisions of said

circuit.

¶7. In particular, the Fifth Circuit analyzed a series of cases which held that "work platforms" did not, in many cases, constitute "vessels" for the purposes of the Jones Act. One of the cases relied upon by the Fifth Circuit in *Pavone* is *Gremillion v. Gulf Coast Catering Company*, 904 F.2d 290 (5th Cir. 1990). In *Gremillion*, the Fifth Circuit noted that a review of case law demonstrated "three common attributes of nonvessels":

> (1) The structure was constructed to be used primarily as a work platform;
>
> (2) the structure is moored or otherwise secured at the time of the accident; and
>
> (3) although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's primary purpose.

*Gremillion*, 904 F.2d at 293-94. See also: *Cook v. Belden Concrete Products*, 472 F.2d 999 (5th Cir.); *Bernard v. Binnings Construction Company*, 741 F.2d 824 (5th Cir. 1984); *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir. 1989).

¶8. The Fifth Circuit in *Pavone* also noted a series of United States Supreme Court cases denying vessel status to structures that have been "withdrawn from navigation," such as crafts that have been "laid up for the winter." See: *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 191 (1952), citing *Hawn v. American S.S. Co.*, 107 F.2d 999, 1000 (2d. Cir. 1939). Based on the aforementioned case law, the Fifth Circuit held that the Biloxi Belle did not constitute a "vessel" for the purposes of the Jones Act and General Maritime Law. The Fifth Circuit wrote that:

> When the undisputed facts of the instant cases are plugged into (1) the *Desper*/*Hawn* withdrawn-from-navigation factors, or (2) the *Barnard/Gremillion* work-platform attributes, or both, and are compared to the functional and nautical characteristics and mooring statuses of the various craft that in earlier cases were held as a matter of law to be nonvessels for Jones Act purposes, there can be little doubt that indefinitely moored, shore-side, floating casinos, such as the Biloxi Belle, must be added to that list.

*Id*. at 569.

¶9. Faced with this adverse authority, King argues that the Fifth Circuit in *Pavone* limited it's holding denying vessel status to the Biloxi Belle to the context of the Jones Act, and not for the purposes of General Maritime Law. Such is clearly not the case. The final paragraphs of *Pavone* set forth the Fifth Circuit's holding that:

> We hold, therefore, that at the times of the Pavone and Ketzel accidents, the Biloxi Belle (1) was removed from navigation, and (2) was a work platform. Under either circumstance, it was not then a vessel for purposes of the Jones Act *or the general maritime law*. (emphasis added). . . . For the foregoing reasons, the summary judgments in the cases consolidated for review herein are, in all respects, affirmed.

¶10. King does not attempt to either distinguish the casino in the present case from the casino in

*Pavone*, nor does she attempt to argue that *Pavone* should not be considered binding authority in the present case to the extent that its holding is applicable to the facts of the present case. King instead attempts to argue that the holding in *Pavone* does not apply to general maritime law, and this argument is clearly untenable. The passage quoted above leaves no doubt whatsoever that the *Pavone* decision is applicable to cases filed under both the Jones Act and under the general maritime law.

¶11. King cites a number of cases holding that a variety of structures, including floating museums moored to shore, do in fact constitute vessels for the purposes of the general maritime law. *McCarthy v. The Bark Peking*, 716 F.2d 130 (2d. Cir. 1983); *Luna v. Star of India*, 356 F.Supp. 59 (S.D. Cal. 1973). In the view of this Court, however, these cases are clearly less persuasive with regard to the present issue than *Pavone*, which deals with injuries to workers similarly situated to King which occurred on another Mississippi Gulf Coast casino and at a point in time (and at a point in development of the case law) very similar to that in the present case. Based on *Pavone*, it appears certain that King would not have been able to survive a motion for summary judgment if she had filed suit in the federal district court for the Southern District of Mississippi.

¶12. Maritime law permits plaintiffs to avail themselves of state courts for maintaining maritime causes of action, but state courts are required to apply the substantive federal law with regard to these maritime causes of action. The courts of this State may properly utilize the Mississippi rules of procedure in hearing the maritime claims, but a plaintiff's substantive rights under maritime law should be the same whether the claim is heard in federal or state court. King's citations of other cases than *Pavone* are in actuality little more than an invitation for this Court to substitute our wisdom for that of the Fifth Circuit on an issue of substantive federal law. Such would clearly be improper, however, and, in the view of this Court, the view of the Fifth Circuit is eminently reasonable when considered in the context of the purposes of maritime law.

¶13. Congress and the federal courts have established the rather generous remedies available to seamen injured in their jobs based in large part upon the increased risks which those workers face in said jobs. A seaman faces numerous dangers and hardships which are not faced by those who work on land. King's work duties, by contrast, do not place her at any greater risk of maritime injury than if she worked at any other seaside entertainment facility or restaurant on the Gulf Coast. The notion that a waiter or waitress working at a shore-based casino should be considered to be a "seaman" based upon the fact that the casino is built on barges which were once properly considered to be "vessels" is contrary to notions of fairness and common sense.

### C. THE GRAND CASINOS' FACILITY MUST BE A VESSEL TO COMPLY WITH THE MISSISSIPPI GAMING CONTROL ACT.

¶14. Also untenable is King's argument that the Grand Casinos should be considered to be a vessel for the purposes of federal maritime law based on the fact that it has represented itself as being a vessel for purposes of licensing itself to conduct gambling operations in this State. Specifically, King argues that:

> In 1990, the Mississippi legislature enacted and amended several statutes to create an exception to the state's general prohibition against gaming or gambling. Specifically, MCA § 97-33-25 allows gambling on a cruise vessel as defined in § 27-109-1. . . . MCA § 27-109-1 defines a

'cruise vessel' as a vessel which complies with all U.S. Coast Guard regulations, having a minimum overall length of 150 feet and a maximum draft of 6 feet and which is certified to carry at least 200 passengers. . . . It is abundantly clear from the legislation that the legislature and the public intended for gaming in Mississippi to be conducted only on vessels.

¶15. King's argument is without merit. The term "vessel" has an entirely different meaning in the context of federal maritime law than in the context of the gaming licensing statutes of this State. Assuming that the Grand Casinos is in fact a "vessel" for the purposes of this State's gaming regulations, said fact is nevertheless utterly irrelevant to the issue of whether said casino constitutes a "vessel" for purposes of the federal maritime law. The definition of "vessel" in §27-109-1 makes no reference whatsoever to the definition of "vessel" under either Jones Act legislation and/or under general maritime case law, nor, of course, do the applicable maritime cases on point make reference to the gaming statutes of this State in defining the term "vessel." This point of error is without merit, and the summary judgment ruling of the trial court is affirmed.

¶16. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶17. In finding that the Grand Casinos facility in Gulfport cannot properly be considered a "vessel" for purposes of maritime law, the majority fails to take into consideration our statutory definitions of "cruise vessel" and "vessel" as well as the legislative directive limiting gaming activities to vessels located on certain navigable waterways and its requirement that all such vessels comply with U.S. Coast Guard regulations. The circuit court therefore erred in finding that Grand Casinos was entitled to summary judgment as a matter of law. Accordingly, I dissent.

¶18. The majority adroitly sidesteps our statutory framework for the approval, licensing, operation and taxation of "vessels" and "cruise vessels" used for gaming and refers to the Grand Casinos facility as a "shoreside casino." The legislature has expressly provided for legal gaming "[o]n a *cruise vessel* as defined in Section 27-109-1 whenever such *vessel is in the waters* within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) southern counties in the State of Mississippi . . ." and [o]n a *vessel* as defined in Section 27-109-1 whenever such *vessel is on the Mississippi River or navigable waters* within any county bordering on the Mississippi River . . . ." Miss. Code Ann. §§ 97-33-1(a) and (b) (emphasis added). It is legal only in those counties where a majority of the qualified electors have voted in favor of allowing legal gaming aboard cruise vessels or vessels. Miss. Code Ann. § 19-3-79; §§ 97-33-1(a) and (b). "Cruise vessel" and "vessel," for purposes of the Gaming Control Act and related laws, are defined in Miss. Code Ann. § 27-109-1(2) as follows:

For purposes of this chapter, the term "cruise vessel" shall mean a vessel which complies with

all U.S. Coast Guard regulations, having a minimum overall length of one hundred fifty (150) feet and a minimum draft of six (6) feet and which is certified to carry at least two hundred (200) passengers; and the term "vessel" shall mean a vessel having a minimum overall length of one hundred fifty (150) feet. The term "vessel" shall also mean a "cruise vessel" as referred to in Section 27-109-11.

¶19. The Jones Act provides no definition of "vessel." Nevertheless, any vessel or cruise vessel used for gaming in Mississippi must comply with U.S. Coast Guard regulations for *vessels.* Moreover, our statutory framework allows gaming only on vessels and cruise vessels and defines both vessel and cruise vessel. Our prior cases, likewise, discuss gaming on vessels, cruise vessels and the like without employing the artful term, "shoreside casino." *See Mississippi Gaming Commission v. Royal Casino Corp.* 691 So. 2d 452 (Miss. 1997)(vessel, gaming ship)(McRae, J., joined by Prather and Sullivan, P.JJ., and Pittman, Banks, Roberts, Smith and Mills, JJ.; Dan Lee, C.J., concurring in results only); *Casino Magic Corp. v. Ladner,* 666 So. 2d 452 (Miss. 1995)(cruise ships and vessels)(Roberts, J., joined by Hawkins, C.J., Dan Lee, P.J., and Sullivan, Pittman and Smith; Banks, J., concurring in results only, joined by McRae, J.; Prather, P.J., not participating); *Mississippi Casino Operator's Ass'n v. Mississippi Gaming Commission,* 654 So. 2d 892 (Miss. 1995)(vessels)(Banks, J., joined by Hawkins, C.J., Dan Lee and Prather, P.JJ., and Sullivan, McRae, Roberts and Smith, JJ.). By definition, therefore, a so-called "shoreside casino" is a vessel.

¶20. In *Texaco, Inc. v. Addison,* 613 So. 2d 1193 (Miss. 1993), where this Court found that a welding barge used to reconstruct an offshore fixed platform oil storage and collection facility was a vessel for purposes of the Jones Act, we noted with approval Louisiana's use of the maritime law "capability test" which defines a "vessel" as encompassing "every description of watercraft or other contrivance used or capable of being used as a means of transportation on water." *Addison,* 613 So. 2d at 1200 (quoting *Orgeron v. Avondale Shipyards, Inc.,* 561 So. 2d 38, 41 (La. 1990)). In *Orgeron*, a barge used as a work platform was found to be a "vessel" because it was capable of navigation on water and at the time of the accident, it was floating on navigable water. *Orgeron,* 561 So. 2d at 43. By statutory definition, all "vessels" and "cruise vessels" used as gaming boats in Mississippi must meet U.S. Coast Guard regulations and be capable of navigation on water. Moreover, because gaming boats are allowed to be moored only on navigable waters as defined in Miss. Code Ann. § 27-109-1(2), the "shoreside casino" in question had to have been floating on navigable water at the time King was injured.

¶21. The Gaming Act was designed to provide for dockside gaming -- only on water and not on land. Thus, it is permitted only on "vessels" and "cruise vessels." We cannot say, as a matter of law, therefore, that the Grand Casinos gaming ship was not a vessel for purposes of the Jones Act or maritime law. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. 46 U.S.C.A. §  688.