SMITH, Justice,
for the Court:
¶ 1. Dorothy Lane, while a janitorial service employee of the Gulfport Grand Casino, suffered injuries to her shoulder when she fell after being struck by a buffing machine operated by a fellow employee. Lane brought suit arguing that she was entitled to recover under the Jones Act and general maritime law.
¶2. Grand Casino argues that Lane was not entitled to relief under the Jones Act or general maritime law because Lane was not a seaman and the Grand Casino was not a vessel within the meaning of either the Jones Act or general maritime law. Grand Casino subsequently moved for summary judgment arguing that Lane was not a seaman for purposes of the Jones Act or general maritime law and that dockside casinos are not vessels within the meaning of either the Jones Act or general maritime law. The circuit court granted summary judgment in favor of Grand Casino and dismissed the suit. Lane appealed to this Court arguing that the trial judge erroneously determined that a dockside casino does not constitute a vessel for purposes of the Jones Act or general maritime law.
¶3. This Court has recently considered this exact factual situation and held that an employee under similar circumstances could not qualify as a seaman, thus the employee was not entitled to Jones Act or general maritime law benefits. See Thompson v. Casino Magic Corp., 708 So.2d 878 (Miss.1998). The Thompson Court stated, “However, it should be made clear that in each case the trial court must consider the factual circumstances of each particular ease in light of the concerns expressed in this opinion as well as by the Fifth Circuit’s comments in Pavone v. Mississippi Riverboat Amusement Corp.[, 52 F.3d 560 (5th Cir.1995)] as quoted supra when determining if a particular barge is a vessel for purposes of federal maritime jurisdiction. On the facts of this particular ease, since Thompson is not a seaman, we need not *1379 determine whether the Casino Magic Barge is a vessel for maritime purposes.” Thompson, 708 So.2d at 882.
¶ 4. Considering the facts of this particular ease, we find that Lane’s position of employment in janitorial service did not constitute a substantial relationship to the navigation of the Grand nor expose her to the perils of the sea. Lane was merely a land based janitorial employee who happened to be working on the Grand at the time of the accident. Thus, Lane was not a seaman for purposes of the Jones Act or general maritime law. This Court need not determine whether the barge at issue is a vessel for maritime purposes.

STATEMENT OF FACTS

¶5. Dorothy Lane (hereinafter “Lane”) was employed by the Gulfport Grand Casino (hereinafter “the Grand”) and served in the capacity of janitorial services when on or about March 23,1994, Lane received injuries to her left shoulder when she fell after being struck by a buffing machine operated by a fellow employee. On November 23, 1994, Lane filed her complaint alleging negligence on the part of the casino and its employees. Lane alleged that she was entitled to recover damages under the Jones Act and general maritime law because the dockside casino is a vessel for purposes of admiralty jurisdiction.
¶ 6. In response, the Grand denied liability and argued that Lane was not entitled to recover under the Jones Act or general maritime law because she was not a seaman nor is the casino a vessel. Furthermore, the Grand asserted that Lane’s exclusive remedy was the Mississippi Compensation Act under which compensation and medical benefits were being paid. On July 14, 1995, the Grand filed a Motion for Summary Judgment and for Sanctions.
¶ 7. After review, Judge Vlahos, relying on precedent of the Fifth Circuit Court of Appeals, granted summary judgment in favor of the Grand Casino and dismissed the case with prejudice holding that the Grand Casino was not a vessel for purposes of the Jones Act or general maritime law. Judge Vlahos specifically found:
The Gulfport Grand Casino is a barge platform and falls outside any of the tests for vessel status. It was not designed as a vessel for the transportation of passengers, equipment, or cargo, but as a dockside, shore based casino. Any navigational function of the Gulfport Grand Casino is incident to its primary purpose of serving as a stationary dockside casino. At the time of the Plaintiffs alleged accident, the Gulfport Grand Casino was not in navigation but was securely fastened to its dockside mooring cells in inland waters and had been so secured over the preceding fourteen months.
¶ 8. From this ruling, Lane now appeals to this Court.

STANDARD OF REVIEW

¶ 9. This Court, in Richmond v. Benchmark Construction Corp., set forth the appropriate procedure for reviewing a case dismissed by the trial court on summary judgment grounds as follows:
Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving partly] is entitled to judgment as a matter of law. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991).
This Court employs a de novo standard of review in reviewing a lower court’s grant of summary judgment. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss.1988). Evidentiary matters are viewed in the light most favorable to the non-moving party. Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 So.2d 1346, 1354 (Miss.1990). If any triable issues of fact exist, *1380 the lower court’s decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1984).
Richmond v. Benchmark Constr. Corp., 692 So.2d 60, 61 (Miss.1997).

DISCUSSION OF LAW

WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE GULFPORT GRAND CASINO.
¶ 10. Lane contends that the circuit court erroneously granted summary judgment to the Grand Casino by concluding that the Grand was not a vessel for purposes of general maritime law and that Lane was not a seaman. The Grand contends that summary judgment was appropriate because the pertinent facts established as a matter of law that the Grand was not a vessel within the meaning of the Jones Act or general maritime law. However, this Court finds that the trial court judge correctly granted summary judgment because Lane fails to attain seaman status.
¶ 11. In order to recover under the auspices of the Jones Act or general maritime law, a plaintiff must establish that he/she is a “seaman.” Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 87, 112 S.Ct. 486, 491, 116 L.Ed.2d 405 (1991). “Seaman status is ordinarily a question for the trier of fact and even where facts are largely undisputed, the jury’s role should not be lightly short-circuited.” Daniel v. Ergon, Inc., 892 F.2d 403, 407 (5th Cir.1990) (citing Bernard v. Binnings Constr. Co., 741 F.2d 824, 827 (5th Cir.1984)). “Thus, the issue of seaman status ‘should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances ... and even marginal Jones Act claims should be submitted to the jury.’” Daniel, 892 F.2d at 407 (quoting Bernard, 741 F.2d at 827). “However, where the ‘only rational inference to be drawn from the evidence is that the worker is not a seaman,’ summary judgment is proper.” Id. (quoting Beard v. Shell Oil Co., 606 F.2d 515, 517 (5th Cir.1979)).
¶ 12. In Chandris, Inc. v. Latsis, the United Sates Supreme Court, after a lengthy historical discussion of the various approaches that different federal courts have taken in determining seaman status for purposes of the Jones Act and general maritime law, stated that there were two essential requirements for seaman status to exist. Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995). The Court described the two essential requirements as follows:
First, as we emphasized in Wilander, “an employee’s duties must ‘contribute] to the function of the vessel or to the accomplishment of its mission.’ ” 498 U.S., at 355 [, 111 S.Ct., at 817] (quoting Robison, 266 F.2d, at 779). The Jones Act’s protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship’s work. But this threshold requirement is very broad: “All who work at sea in the service of a ship” are eligible for seaman status. 498 U.S., at 354 [, 111 S.Ct., at 817],
Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See IB A. Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) (“If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the *1381 test for seaman status will be satisfied” (footnote omitted)). TMs requirement therefore determines which maritime employees in Wilcmder’s broad category of persons eligible for seaman status because they are “doing the ship’s work,” 498 U.S., at 355 [111 S.Ct., at 817], are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.
Chandris, 515 U.S. at 368-69, 115 S.Ct. at 2190. The Court further stated that all of the various approaches in determining seaman status employed by the Courts of Appeals arrive at the same point:
The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to “the special hazards and disadvantages to which they who go down to sea in ships are subjected.” Sieracki, 328 U.S., at 104 [66 S.Ct., at 882] (Stone, C. J., dissenting). Indeed, it is difficult to discern major substantive differences in the language of the two phrases. In our view, “the total circumstances of an individual’s employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.” Wallace v. Oceaneering Int'l, 727 F.2d 427, 432 (C.A.5 1984). The duration of a worker’s connection to a vessel and the nature of the worker’s activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel’s crew or simply a land-based employee who happens to be working on the vessel at a given time.
Chandris, 515 U.S. at 370, 115 S.Ct. at 2190-91 (emphasis added). The United States Supreme Court concluded that in order to attain seaman status “a seaman must have a substantial connection with a vessel in navigation both in duration and nature.” Id. “The status of the individual as a seaman is based on his/her substantial status as a member of the crew, and the substantial relationship to the vessel and its navigation in the water.” Thompson, 708 So.2d at 883 (citing Chandris, 515 U.S. at 360-61, 115 S.Ct. at 2186).
¶ 13. Two years later, in Harbor Tug & Barge Co. v. Papai, the United States Supreme Court revisited its two essential requirement test for determining seaman status set forth in Chandris. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, -, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997). The Supreme Court stated that whether an employee satisfies seaman status often will turn on the second standard in Chandris “which requires the employee to show a ‘connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.’ ” Papai, 520 U.S. at -, 117 S.Ct. at 1540 (quoting Chandris, 515 U.S. at 368, 115 S.Ct. at 2190). The Supreme Court further explained the appropriate analysis under this second standard as follows:
For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee’s connection to the vessel must concentrate on whether the employee’s duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee’s connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

Id.

¶ 14. In the case sub judice, the trial court correctly granted summary judgment to the Grand. Summary judgment was appropriate in this ease because at no point in her employment at the Grand did Lane attain seaman status under the criteria set forth in Chandris. In order for Lane to achieve seaman status while working on the Grand, her employment would have had to reach the level of a substantial connection to the Grand in terms of both its duration and its nature.
¶ 15. In Thompson, this Court held that:
Thompson was not a seaman for two distinct reasons. First, Thompson’s relationship to a ship in navigation (the Dubuque *1382 Belle) "was so temporal that she was not a seaman. Thompson had no duties while the boat was in motion, she slept at home, boarded off ship and was an hourly wage earner. Therefore Thompson was more like a casual worker on the water, not a seaman. Second, she was not a seaman because she fails to classify as part of the crew with regard to navigation and operation of the Dubuque Belle at sea. Clearly, if the Dubuque Belle left the dock and sailed around the Gulf of Mexico and Thompson was on board as a change person, she would probably be considered a seaman.
Thompson, 708 So.2d at 883.
¶ 16. In requiring that these type cases must be determined on their respective particular facts, this Court in Thompson also noted that:
[T]o say a casino barge is not a “vessel” under federal maritime law in all circumstances is overly broad and incorrect. These barges are capable of moving on navigable waters and several casino barges have been moved due to inclement weather as well as to relocate for business reasons. If an accident occurs during one of these moves and a worker is injured during that move, it is possible that the worker may classify as a “seaman” and his claim should not be barred because this Court has determined as a matter of law that the casino barge is not a “vessel.”
Id. 708 So.2d at 881.
¶ 17. Under the facts of this case, there exists no factual dispute that Lane’s employment status with the Grand failed to reach the level of seaman status. First of all, the Grand was not a vessel in navigation. At the time of Lane’s injury, the Grand was a stationary dockside casino that had never been used in navigation, was securely fastened to its dockside mooring cells in inland waters, and had been secured over the preceding fourteen months. Second, Lane was employed in janitorial services and was injured while assisting in the cleaning of one of the bathrooms on the Grand. Lane had no duties while the casino boat was in motion, she slept at home, boarded off the Grand and was an hourly wage earner. Further, she was not a seaman because she fails to classify as part of the crew with regards to the navigation and operation of the Grand at sea. Granted, had the barge sailed from dock on the open sea and Lane was injured while on board as a janitor, we possibly would be faced with a different result because Lane might qualify as a seaman. See id. 708 So.2d at 881.
¶ 18. The Jones Act was passed to provide further protection for persons who subjected themselves to the perils of the sea. Chandris, 515 U.S. at 370, 115 S.Ct. at 2190-91. It is obvious that Lane did not have a substantial relation to the navigation of the Grand nor was she exposed to the perils of the sea. Id. Here, “[wjhere the ‘only rational inference to be drawn from the evidence is that the worker is not a seaman,’ summary judgment is proper.” Daniel v. Ergon, Inc., 892 F.2d 403, 407 (5th Cir.1990) (quoting Beard v. Shell Oil Co., 606 F.2d 515, 517 (5th Cir.1979)). We hold, as in Thompson, that under the facts of this particular case, that at the time of the accident, Lane was nothing more than a land-based employee who happened to be working on the Grand at a given time, and thus, Lane can not be classified as a seaman.

CONCLUSION

¶ 19. In order to recover under the auspices of the Jones Act or general maritime law, a plaintiff must establish that he/she is a “seaman.” Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 87, 112 S.Ct. 486, 491, 116 L.Ed.2d 405 (1991). Even considering the facts in the most favorable light to Lane’s claims, Lane fails to attain seaman status. Lane’s connection to a vessel in navigation falls short of reaching a level substantial in both its duration and its nature and, thus, fails to satisfy the criteria set forth in Chandris. Summary judgment was appropriate in the instant case because no factual dispute *1383 existed as to whether Lane was a seaman for purposes of the Jones Act or general maritime law. The only rational inference to be drawn from the evidence is that Lane is not a seaman. Daniel, 892 F.2d at 407. Therefore, the decision of the trial court to grant the Motion for Summary Judgment in favor of the Grand Casino is affirmed.
¶ 20. JUDGMENT AFFIRMED.
PRATHER, C.J., SULLIVAN and PITTMAN, P.JJ., and BANKS, JAMES L. ROBERTS, Jr., MILLS and WALLER, JJ., concur.
McRAE, J., dissents with separate written opinion.