## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01161-SCT

*RHONDA RUSH*

*v.*

*CASINO MAGIC CORPORATION, MARDI GRAS CASINO CORPORATION AND FICTITIOUS PARTIES A B C*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/1998 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH R. WATKINS |
| ATTORNEYS FOR APPELLEES: | GEORGE F. BLOSS, III |
| | RICHARD SLIMAN |
| | MATTHEW MILLE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 7/1/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/22/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Rhonda Rush ("Rush") worked as a cocktail waitress at the Casino Magic ("Casino") facility from September 15, 1991, until February 5, 1992, when she slipped on what was believed to be "chapstick" lying on the floor. Rush has undergone three back surgeries and remains in constant pain, unable to return to work. Rush filed suit against the Casino, alleging that the Casino was a "vessel" for the purposes of the Jones Act and General Maritime Law. She further alleged that the Casino is exposed to the "perils of the sea," has characteristics generally associated with Jones Act vessels, and is in navigation.

### STATEMENT OF FACTS

¶2. Rush worked as a cocktail waitress at the Casino from September 15, 1991, until February 5,1992, when she slipped on "chapstick" lying on the floor. Rush has undergone three back surgeries and remains in constant pain, unable to return to work.

¶3. Rush filed suit against the Casino. She filed her claim under 46 U.S.C. § 688, alleging that she was a

seaman injured while working on a maritime vessel. She further alleged that the Casino was a "vessel" for the purposes of the Jones Act and General Maritime Law. She also alleged that the Casino is exposed to the "perils of the sea," has characteristics generally associated with Jones Act vessels, and is in navigation.

¶4. The Casino answered, denying that Rush was seaman and that the Casino was a vessel. The Casino then moved for summary judgment. The trial court granted summary judgment for the defendants, citing ***King v. Grand Casinos of Mississippi, Inc.-Gulfport***, 697 So.2d 439 (Miss. 1997), ***Thompson v. Casino Magic Corp.***, 708 So.2d 878 (Miss. 1998), and ***Lane v. Grand Casinos of Mississippi, Inc.-Gulfport***, 708 So.2d 1377 (Miss. 1998), for the proposition that Rush was not a seaman under the Jones Act.

## STATEMENT OF ISSUES

**I. WHETHER STATUTORY QUALIFICATIONS REQUIRE THE MARDI GRAS CASINO VESSEL TO BE A "CRUISE VESSEL" LOCATED ON A NAVIGABLE WATER.**

**II. WHETHER THE MARDI GRAS CASINO VESSEL IS A "VESSEL" FOR PURPOSES OF THE JONES ACT AND GENERAL MARITIME LAW.**

**III. WHETHER A COCKTAIL WAITRESS INJURED ABOARD A VESSEL IS A JONES ACT "SEAMAN."**

**IV. WHETHER THE TRIAL COURT ERRED IN NOT UPHOLDING THE PLAINTIFF'S "UNSEAWORTHINESS" CLAIM UNDER GENERAL MARITIME LAW.**

## STANDARD OF REVIEW

¶5. The standard of review governing reviews of summary judgment is well settled in this state:

> The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to a judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where on party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Lumberman's Underwriting Alliance v. City of Rosedale*, 727 So.2d 710, 712-13 (Miss. 1998) (quoting ***Aetna Casualty & Surety Co. v. Berry***, 669 So.2d 56 (Miss. 1996).

¶6. This Court has further stated that

> . . .[A] motion for summary judgment should be denied unless the trial court finds beyond any reasonable doubt that the plaintiff would be unable to prove any facts to support his/her claim.

*Lumberman's Underwriting Alliance*, 727 So.2d at 713.

# DISCUSSION OF LAW

## I. WHETHER STATUTORY QUALIFICATIONS REQUIRE THE MARDI GRAS CASINO VESSEL TO BE A "CRUISE VESSEL" LOCATED ON A NAVIGABLE WATER.

## II. WHETHER THE MARDI GRAS CASINO VESSEL IS A "VESSEL" FOR PURPOSES OF THE JONES ACT AND GENERAL MARITIME LAW.

¶7. Rush maintains that the Mardi Gras Casino gaming vessel is required by law to be a cruise vessel located on navigable waters. Rush further maintains that because the gaming vessel is a cruise vessel located on navigable waters, she should be entitled to recovery for her injuries under the Jones Act.

¶8. Rush cites three statutes in support of her contention: Miss. Code Ann. §§ 97-33-1 & -7 (1994) and 27-109-1 (1990). Section 27-109-1 defines a cruise vessel. Section 97-33-1 prohibits betting, gaming, or waging unless the betting, gaming, or waging occurs on a cruise vessel as defined in Miss. Code Ann. § 27-109-1. Section 97-33-7 prohibits certain gaming devices except those found on a cruise vessel as defined in Miss. Code Ann. § 27-109-1.

¶9. This exact issue was recently addressed by this Court in *King v. Grand Casinos of Mississippi, Inc. - Gulfport*, 697 So.2d 439 (Miss. 1997). There we held that:

> . . . The term "vessel" has an entirely different meaning in the context of federal maritime law than in the context of the gaming licensing statutes of this State. Assuming that the Grand Casinos is in fact a "vessel" for the purposes of this State's gaming regulations, said fact is nevertheless utterly irrelevant to the issue of whether said casino constitutes a "vessel" for the purposes of the federal maritime law. The definition of "vessel" in § 27-109-1 makes no reference whatsoever to the definition of "vessel" under either Jones Act legislation and/or under general maritime case law, nor, of course, do the applicable maritime cases on point make reference to the gaming statutes of this state in defining the term "vessel."

*King*, 697 So.2d at 442-43. We reiterated *King's* holding in *Thompson v. Casino Magic Corp.*, 708 So.2d 878 (Miss. 1998), stating:

> This Court recently determined that shore side casinos constructed out of navigable barges were not vessels for purposes of federal maritime law. *King v. Grand Casinos of Mississippi, Inc. - Gulfport*, 697 So.2d 439 (Miss. 1997). King defers to the Fifth Circuit federal court ruling that moored barges for gambling are not vessels under federal maritime law. *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560 (5th Cir. 1995) consolidated with *Ketzel v. Mississippi Riverboat Amusement, Ltd.*, 867 F.Supp. 1260 (S.D. Miss. 1994).

*Thompson*, 708 So.2d at 881.

¶10. However, in *Thompson* we said that "it should be made clear that in each case the trial court must consider the factual circumstances of each particular case in light of the concerns expressed by this opinion as well as by the Fifth Circuit's comments in *Pavone v. Mississippi Riverboat Amusement Corp.* as quoted supra when determining if a particular barge is a vessel for the purposes of federal maritime

jurisdiction."*Id.* at 882. In *Thompson* we did not decide whether the Casino Magic barge was a vessel for maritime purposes because we concluded that Thompson, a casino "change person," was not a seaman.

¶11. This issue is, therefore, without merit.

### III. WHETHER A COCKTAIL WAITRESS INJURED ABOARD A VESSEL IS A JONES ACT "SEAMAN."

¶12. Again, this Court has addressed this exact issue and concluded that a cocktail waitress is not a "seaman" for the purposes of the Jones act. The facts in *King* are almost identical to the facts in the case sub judice: a cocktail waitress slipped on something, falling to the floor and injuring herself. In *King*, this Court stated:

> Congress and the federal courts have established the rather generous remedies available to seamen injured in their jobs based in large part upon the increased risks which those workers face in said jobs. A seaman faces numerous dangers and hardships which are not faced by those who work on land. King's work duties, by contrast, do not place her at any greater risk of maritime injury than if she worked at any other seaside entertainment facility or restaurant on the Gulf Coast. The notion that a waiter or waitress working at a shore-based casino should be considered to be a "seaman" based upon the fact that the casino is built on barges which were once properly considered to be "vessels" is contrary to notions of fairness and common sense.

*King*, 697 So.2d at 442.

¶13. This Court in *Thompson* set forth the criteria for one to be considered a seaman: (1) the duties of the employee must contribute to the function of the vessel or to the accomplishment of its mission, and (2) the employee must have a connection to a vessel that is actually in navigation that is substantial in terms of both its duration and its nature. Applying those criteria to a casino "change person," *Thompson* found no seaman status. *Thompson*, 708 So.2d 882. In *Lane v. Grand Casinos of Mississippi, Inc. - Gulfport*, 708 So.2d 1377 (Miss. 1998), we applied these criteria and found that a casino janitorial employee was not a seaman. In *Wininger v. Ameristar Casino, Inc.*, 1999 WL 228986 (Miss.App., 1999), a divided Court of Appeals recently followed *Lane* and affirmed a summary judgment that an Ameristar Casino security guard was not a seaman. The dissent argued that there was a sufficient evidentiary basis to establish a jury issue on both the vessel and seaman issues.

¶14. Based on these criteria, Rush is not a seaman for the purposes of the Jones Act. First, the casino was moored at the time of the accident. It was not in navigation, as required by criterion 2. Second, a cocktail waitress can in no way be found to contribute to the function of the vessel, as required by criterion 1. This issue is also without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN NOT UPHOLDING THE PLAINTIFF'S "UNSEAWORTHINESS" CLAIM UNDER GENERAL MARITIME LAW.

¶15. Based on *King*, *Thompson*, and *Lane*, this issue is without merit.

### CONCLUSION

¶16. Based on *King, Thompson*, and *Lane,* the circuit court properly granted summary judgment for

Casino Magic. For the above and foregoing reasons, the judgment of the circuit court is affirmed.

¶17. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶18. Because casinos have to be a vessel on water, Coast Guard approved and declared by the legislature to be vessels, I write to reaffirm my belief that shoreside casinos are vessels. Thus, casino employees should be able to pursue their rightful Jones Act and/or Maritime and Longshoreman Act remedies for any injuries suffered by them in addition to any other compensation to which they may be entitled.[1] *See King v. Grand Casinos of Mississippi - Gulfport*, 697 So.2d 439 (Miss. 1997) (McRae, J. dissenting) and *Lane v. Grand Casinos of Mississippi, Inc. - Gulfport*, 708 So.2d 1377 (Miss. 1998) (McRae, J. dissenting)**.**

¶19. Nonetheless, to the extent that this Court adheres to the type of analysis performed by the Fifth Circuit in *Pavone v. Mississippi Riverboat Amusement Corporation*, 52 F.3d 560, 568 n. 22 (5th Cir. 1995), in determining whether a shoreside casino is a vessel, I write to emphasize that this determination must be made on a case by case basis. Even under *Pavone* it is not axiomatic that a shoreside casino can never be a vessel for purposes of the Jones Act. We recognized this, albeit somewhat belatedly, in *Thompson v. Mardi Gras Casino Corporation*, 708 So.2d 878 (Miss. 1998).

¶20. The Jones Act grants "[a]ny seaman who shall suffer personal injury in the course of his employment" the right to seek damages in a jury trial against the employer. 46 U.S.C. § 688 (1994). The determination of whether a plaintiff qualifies for seamen status is necessarily fact specific. *Southwest Marine v. Gizoni*, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991); *McDermott Int'l Inc. v. Wilander*, 498 U.S. 337, 349, 111 S.Ct. 807, 112 L.Ed2d. 866 (1991). Thus, summary judgment should rarely be granted in Jones Act cases. *Gianfala v. Texas Co.*, 350 U.S. 879 (1955) rev'g 222 F.2d 382 (5th Cir. 1955) (granting summary judgment); *Offshore Co. v. Robinson*, 266 F.2d 769, 779 (5th Cir. 1959).

¶21. For an employee to qualify as a "seaman" under the Jones Act, the employee's duties must contribute to the function of a vessel or to the accomplishment of its mission, and the employee must have a connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both its duration and nature. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). "'The key to seaman status is employment-related connection to a vessel in navigation . . . . It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work.'" *Gizoni*, 502 U.S. at 88 *quoting McDermott Int'l Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 112 L.Ed2d. 866 (1991).

¶22. "A prerequisite to seaman status, and thus to recovery under the Jones Act, is the existence of a vessel." *Ducote v. V. Keeler & Co., Inc.*, 953 F.2d 1000, 1002 (5th Cir. 1992). *See also* Norris, The law of seamen, § 330.12, p. 360 (4th Ed. 1985) ("A determination of who are 'seamen' necessarily entails

an examination of what is a vessel"); ***Reynolds v. Ingalls Shipbuilding Div. Litton Systems***, 788 F.2d 264 (5th Cir. 1986) cert. denied 107 S.Ct. 278, 93 L.Ed.2d 253 ("without a vessel in navigation there can be no Jones Act coverage").

¶23. Because the term "vessel", as more than one court has noted[(2)], is one which is incapable of precise definition, "[a]ttempts to fix unvarying meanings having a firm legal significance to such terms as 'seaman,' 'vessel,' 'member of a crew' must come to grief on the facts." ***Bernard v. Binnings Construction Co.***, 741 F.2d 824, 829 (5th Cir. 1984). *See also* ***Tonnesen v. Yonkers Contracting Co., Inc.***, 82 F.3d 30, 33 (2d Cir. 1996) (" the term 'vessel' has such a wide variety of meaning that, except in rare cases, only a jury or trier of facts can determine its application in the circumstances of a particular case"); ***Ellender v. Kiva Constr. & Engineering Inc.***, 909 F.2d 803 (5th Cir. 1990); ***Cantrell v. Kiva Constr. & Eng., Inc.***, 630 So.2d 265 (La. App. 1993). "[T]he policy of providing an expansive remedy for seamen . . . mandates that even marginal claims are properly left for a jury's determination." ***Tonnesen v. Yonkers Contracting Co., Inc.***, 82 F.3d 30, 33 (2d Cir. 1996).

¶24. In determining what is a vessel, one starts by asking "what is the 'purpose for which the craft is constructed and the business in which it is engaged?'" ***Manuel v. P&W Drilling & Well Service, Inc.***, 135 F.3d 1390, 350 (5th Cir. 1998) *quoting* ***The Robert W. Parsons***, 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed 73 (1903). Faced with the question of whether dockside casinos were entitled to the status of Jones Act vessels, the Fifth Circuit constructed a three part test in ***Pavone v. Mississippi Riverboat Amusement Corporation***, 52 F.3d 560, 570. (5th Cir. 1995). Nonvessels, the court stated, share three characteristics:

> 1. The structure was constructed to be used primarily as a work platform;
>
> 2. The structure is moored or otherwise secured at the time of the accident; and
>
> 3. although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's purpose.

This Court appears to have adopted the Fifth Circuit's definition of a nonvessel with its opinion in ***King***. ***King***, 697 So.2d at 441.

¶25. A year after ***King*** was decided, this Court handed down ***Thompson v. Casino Magic Corp.***, 708 So.2d 878 (Miss. 1998), which involved injuries to a change person working at a dockside casino. In ***Thompson***, the Court held that regardless of whether the casino was a vessel, the employee was not a seaman inasmuch as 1) she had no duties while the boat was in motion and 2) she was not a part of the crew with regard to the navigation and operation of the ship when it was at sea. ***Thompson***, 708 at 883.

¶26. ***Thompson,*** however, contains a caveat:

> to say that a casino barge is not a "vessel" under federal maritime law in all circumstances is overly broad and incorrect. These barges are capable of moving on navigable waters and several casino barges have been moved due to inclement weather as well as to relocate for business reasons. If an accident occurs during one of these moves and a worker is injured during that move, it is possible that the worker may classify as a "seaman" and his claim should not be barred because the Court has determined as a matter of law that the casino barge is not a "vessel." This would fly in the very face of

the Jones Act, namely to protect workers who do the ship's work and are regularly exposed to the perils of the sea. *Chandris*, 515 U.S. at 369, 115 S.Ct. At 2190.

*Thompson*, 708 So.2d at 881.[(3)]

¶27. To the extent that *King* can be read to have decided once and for all that Mississippi's shoreside casinos do not qualify as Jones Act vessels, it is wrong; *Thompson* depicts a more accurate picture of federal case law in this regard. This point is well made in a Tulane Law Review Note published last November, "King v. Grand Casinos of Mississippi, Inc. - Gulfport: Is Vessel Status Under Federal Maritime Law More than a Roll of the Dice?", 73 Tul.L.Rev. 365 (Nov. 1998). "A blanket holding that 'indefinitely moored, shore-side, floating casinos' are not vessels may cause the court in the [*King*] case problems in dealing with future cases concerning different casinos." "King v. Grand Casinos of Mississippi, Inc. - Gulfport: Is Vessel Status Under Federal Maritime Law More than a Roll of the Dice?", 73 Tul.L.Rev. at 382.

¶28. As the above authorities demonstrate, the determination of whether a shore-side casino qualifies as a vessel should be a jury determination. Accordingly, I dissent to the extent that our cases, including this one, would indicate otherwise.


1. Though the Jones Act was intended to be the exclusive remedy for seamen, an amphibious worker may recover under state remedies that are credited toward any recovery under the Jones Act or general maritime law. *Ditmore v. Fairfield, Ind.*, 855 F.Supp. 187, 189-90 (S.D.Tex. 1994).

2. *See, e.g.* *Ducote,* 953 F.2d at 1002.

3. *Lane v. Grand Casinos of Mississippi, Inc. - Gulfport*, 708 So.2d 1377 (Miss. 1998), was decided by this Court in March, 1998. It held that a janitorial employee injured while operating a buffing machine on a stationary casino that had never been used in navigation and was moored to the shore was not a seaman entitled to relief under the Jones Act. This opinion, like *Thompson,* recognizes that a different result might have been reached "had the barge sailed from dock on the open sea and Lane was injured while on board as a janitor." .