**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

m 98-60580
_____


In the Matter of:
TREASURE BAY CORPORATION,

Debtor.

HAM MARINE, INC.,

Appellant,

VERSUS

FIRST TRUST NATIONAL ASSOCIATION,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:97-CV-488-BrR)
_____
April 16, 2001

Before SMITH and DENNIS, Circuit Judges, and ROETTGER,[*]
District Judge.

ROETTGER, District Judge:[**]

Ham Marine Inc. appeals from the district court's order

affirming the summary judgment entered by the Bankruptcy Court

against appellant in which the Bankruptcy Court determined Ham

_____

[*] District Judge of the Southern District of Florida, sitting
by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Marine Inc. did not possess a water craft lien pursuant to Miss. Code Ann. § 85-7-7. As this Court finds that any such lien would be subordinate to appellee's mortgage, we affirm.

I.

Treasure Bay Gaming & Resorts, Inc. ("TBGR") issued notes to finance the construction of a floating dockside casino in Biloxi, Mississippi. These notes evidenced the indebtedness of TBGR to First Trust National Association ("First Trust"). The proceeds of these notes were lent to Treasure Bay Corporation ("Treasure Bay") a wholly owned subsidiary of TBGR in return for a first preferred ship's mortgage and further security in the form of a deed of trust, leasehold deed of trust, assignment of rents, security agreement, financing statement and fixture filing upon all the assets of Treasure Bay. TBGR then assigned all its interests to First Trust.

The Treasure Bay Biloxi Casino opened in April 1994. Several months later Treasure Bay hired appellant, Ham Marine Inc. ("Ham Marine"), to make certain modifications to facilitate transportation of the casino barge in event of a hurricane and to stabilize the casino barge to reduce motion sickness among its patrons. Ham Marine developed a hurricane evacuation plan which was required of TBGR by the Mississippi Gaming commission. In case of a storm, the casino barge would be towed forty miles from Biloxi to Pascagoula. Modifications by Ham Marine readied the casino barge for such a potential journey. This work included

2

reinforcement of the stern of the barge, construction of push knees and tow devices, and construction of chains and anchors to secure the barge on its arrival in Pascagoula.[1]

Ham Marine was not paid for the work it performed and sought to establish various liens including a water craft lien pursuant to Miss. Code Ann. § 85-7-7. On November 2, 1994, Ham Marine filed suit in Mississippi Circuit Court for the enforcement of a water craft lien for improvements made to the Treasure Bay Casino. On November 4, 1994, Ham Marine filed a Notice of Water Craft Lien in the records of Harrison County, Mississippi.

In December, 1994, an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code, later converted into a Chapter 11 petition, was filed against TBGR. In February, 1997, First Trust filed a motion for summary judgment as to the priority of its encumbrances. In June 1997, the bankruptcy court granted the motion in favor of First Trust on the grounds that the Treasure Bay Biloxi Casino was not a water craft and, therefore, Ham Marine did not possess a water craft lien. Ham Marine filed a notice of appeal as to this order on June 20, 1997. The district court affirmed the bankruptcy

---

[1]Subsequently, after instructions from the gaming commission to remain in Biloxi during any storm, another contractor was hired who welded the casino barge to the surrounding pilings converting it into a semi-permanently moored structure.

3

court's decision.[2]

## II.

Appellant seeks review of the determination that the Treasure Bay Biloxi Casino does not qualify as a water craft for purposes of Miss. Code Ann. § 85-7-7. A summary judgment is reviewed de novo using the same standards applied by the lower court. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). In resolving issues of state law, the Court will interpret a state statute in the manner the court believes the state Supreme Court would. F.D.I.C. v. Shaid, 142 F.3d 260, 261 (5th Cir. 1998).

Miss. Code Ann. § 85-7-7 provides:

> There shall be a lien on all ships,
> steamboats and other water craft for work
> done or materials supplied by any person in
> this state for or concerning the building,

---

[2]Also in February 1997, Treasure Bay, TBGR and First Trust filed an amended joint plan of reorganization which classified Ham Marine's claim as both a secured and unsecured claim. In August 1997, the bankruptcy court confirmed the plan identifying Ham Marine as an unsecured creditor. Ham Marine did not appeal the confirmation order. First Trust contends that Ham's appeal is barred by the doctrine of res judicata as no appeal was taken from the order confirming the plan. However, on June 26, 1998, the bankruptcy court entered an order recognizing the pendency of Ham Marine's appeal and its lack of jurisdiction concerning any issues related thereto. Alternatives to the handling of Ham Marine's claims were established so that distribution according to the plan could proceed. In light of this reservation of right, the doctrine of res judicata does not apply. See King v. Provident Life and Accident Insurance Company, 23 F.3d 926 (5th Cir. 1994). First Trust also contends that this appeal is equitably moot. In the Matter of: GWI PCS 1 Inc.,230 F.3d 788 (5th Cir. 2000). As the resolution of this appeal does not alter the reorganization plan, this issue will not be addressed.

> repairing, fitting, furnishing, supplying or
> victualing such ships, steamboats or other
> water craft, and for the wages of the persons
> employed on board such vessel, boat, or
> craft, for work done or services rendered, in
> preference to all other debts due and owing
> from the owners thereof.  The said lien shall
> expire six months after the claim is due
> unless judicial proceedings have been
> commenced to assert it.

As appellant concedes that the Treasure Bay Biloxi Casino is not a ship or steamboat, the inquiry turns to the meaning of the phrase "other water craft".  The Mississippi Code provides no definition.  In <u>Archibald v. Citizens' Bank of Louisiana</u>, 1 So. 739 (1887), the Mississippi Supreme Court recognized an enforceable water craft lien with respect to a barge.   In so doing, the court did not set forth the attributes of the barges involved.   As the defining characteristics of a barge are not set forth, this case sheds no light on whether the Treasure Bay Biloxi Casino is a type of barge which would qualify for a water craft lien.

However, review of the legislation permitting the existence of floating dockside casinos under Mississippi law sheds light on their classification.  In approving gambling, the Mississippi legislature set forth that gaming was to take place on a vessel or cruise vessel in navigable waters.   <u>See</u> Miss. Code Ann. §§ 97-33-1(a) and (b).  Miss. Code Ann. § 27-109-1 defines a "cruise vessel" as:

5

a vessel which complies with all U.S. Coast
guard regulations, having a minimum overall
length of one hundred fifty (150) feet and a
minimum draft of six (6) feet and which is
certified to carry at least two hundred (200)
passengers; and the term "vessel" shall mean
a vessel having a minimum overall length of
one hundred fifty (150) feet.

In <u>King v. Grand Casinos of Mississippi, Incorporated-Gulfport</u>, 697 So.2d 439 (1997), the Mississippi Supreme Court discussed the nature of these dockside casinos in a Jones Act case requiring the interpretation of federal law.  Although ruling the casino barge was not a vessel for purposes of the Jones Act, the court noted that these casinos could be viewed entirely differently from the perspective of Mississippi law.  In advocating the position that a casino is a vessel for purposes of the Jones Act, Justice McCrae underscores this point by stating in dissent ". . . the majority fails to take into consideration . . . the legislative directive limiting gaming activities to vessels located on certain navigable waterways . . . ." <u>Id</u>. at 443.  As Mississippi law confers these gambling barges with vessel status, it follows that those who provide repair services would qualify for the protection afforded by the state's water craft lien statute.[3]

---

[3]    If the Court were to draw an analogy with federal law, the Treasure Bay Biloxi Casino might qualify as a vessel under Fifth Circuit precedent.  Ham Marine seeks a maritime lien for modifications made to the Treasure Bay Biloxi in order to transport it to safe harbor in the event of a hurricane.  There is authority in cases dealing with claims for repairs rendered a vessel which
(continued...)

However, it is unnecessary to reach a conclusion with reference to the status of the Treasure Bay Biloxi Casino in order to affirm the district court.  Appellee argues that even were appellant to possess a water craft lien under Miss. Code Ann. § 85-7-7, the decision of the Bankruptcy Court should be affirmed as appellee's claim would have priority by virtue of its first preferred ship's mortgage under 46 U.S.C. § 31322.  46 U.S.C. § 31326(b) provides that a preferred mortgage lien has priority over all claims against a vessel except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens.  A preferred maritime lien is defined as one arising before a preferred mortgage is filed; for damage arising out of maritime tort; for wages of a stevedore; for wages of the crew of a vessel; for general average; or for salvage.  46 U.S.C. § 31301(5).

Appellant's water craft lien would not fall into these categories and would, therefore, be subordinate to appellee's preferred mortgage.   While appellant advances equitable concerns in its brief, the priority of a mortgage holder will not be subordinated absent inequitable conduct by the mortgagee which

---

³(...continued)
give rise to claims for maritime liens that a type of water craft, long afloat, readily towable, and entirely capable of being used, even if inefficiently, in transportation is a vessel. See Miami River Boat Yard, Inc. v. 60' Houseboat, Serial No. SC-40-2860-3-62, 390 F.2d 596 (5th Cir. 1968); Pleason v. Gulfort Shipbuilding Corp., 221 F.2d 621 (5th Cir. 1955); and Campbell v. Loznicka, 181 F.2d 356 (5th Cir. 1950).

results in injury to other creditors or confers an unfair advantage to the mortgagee.  There is no inequitable conduct by the mortgagee in the instant case rising to the level requiring a finding of equitable subordination such as in <u>Custom Fuel Services, Inc. v. Lombas Industries, Inc.</u>, 805 F.2d 561 (5th Cir. 1986).

Accordingly, the summary judgment entered by the bankruptcy court and affirmed by the district court is hereby AFFIRMED.